***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stanback and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission modifies and affirms the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matter of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Commission and the Commission has jurisdiction of the parties and the subject matter.
2. Gallagher Bassett Services was the carrier on the risk.
3. Defendant-employer regularly employs three or more employees and is bound by the North Carolina Workers' Compensation Act.
4. An employer-employee relationship existed between the parties on October 13, 2003.
5. Plaintiff's average weekly wage as determined by a Form 22 submitted by defendants is $266.23, yielding a compensation rate of $177.50.
6. Documents stipulated into evidence include plaintiff's medical records; discovery; plaintiff's recorded statement; Industrial Commission forms; and plaintiff's daily payroll transactions.
 ***********
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the Deputy Commissioner's hearing, plaintiff was a 48-year-old divorced male with a high school degree and two and a half years of college at Western Carolina University. Plaintiff has an 18-year history of employment as a sauté chef, or line cook, in several Triangle area restaurants.
2. Plaintiff began working for defendant-employer in June 2001. Plaintiff's job duties included cooking items in two to four-pound sauté pans on any one or all twelve stove burners at his station, mixing and plating food items, stocking food, pans, and dishes when necessary, cleaning the station including overhead hoods, taking out trash, and washing dishes. Plaintiff is approximately 5' 11" tall. Several of plaintiff's job duties required him to engage in overhead lifting, reaching and repetitive motions, such as cleaning.
3. On October 13, 2003, plaintiff raised a stack of pans to an overhead shelf above the sauté station as part of his regular duties with defendant-employer. At that moment, plaintiff felt something pop and experienced an immediate onset of pain in his right shoulder.
4. On October 14, 2003, plaintiff went to Raleigh Community Hospital, complaining of pain in his right shoulder. Plaintiff was given a prescription for Percocet and was instructed not to engage in any bending, pulling or lifting for the next three days. Plaintiff was also referred to Dr. Fredrick Benedict of Capital Orthopedic in Raleigh for a follow up. Dr. Benedict is a board-certified orthopedic surgeon.
5. On October 16, 2003, plaintiff again presented to Raleigh Community Hospital. Plaintiff was having continued shoulder pain and difficulty getting his prescription filled.
6. On October 17, 2003, plaintiff saw Dr. Benedict and complained of continuing pain in his right shoulder. Dr. Benedict felt that plaintiff probably had right rotator cuff tendinopathy and a possible partial tear. Dr. Benedict believed that plaintiff's condition was "more of a cumulative thing. I don't believe that lifting a pan that one particular day caused all of the damage." Dr. Benedict prescribed pain medication and physical therapy to strengthen plaintiff's shoulder and arm in the hope that the condition would clear up quickly. Dr. Benedict also took plaintiff out of work for two weeks.
7. On November 19, 2003, plaintiff had a follow up appointment with Dr. Benedict. Plaintiff's shoulder was still hurting. Dr. Benedict gave plaintiff another prescription for Percocet, in addition to a prescription to help plaintiff's anxiety. However, Dr. Benedict testified that as of November 19, 2003, plaintiff was capable of some light-duty work but that plaintiff did not seem interested in returning to work. Dr. Benedict was not informed whether light-duty work was available for plaintiff, so he took plaintiff out of work and ordered an MRI.
8. The MRI of plaintiff's right shoulder was performed on December 11, 2003. Upon review of the test results, Dr. Benedict prescribed and administered a cortisone injection to plaintiff's right AC joint. Plaintiff experienced some temporary relief of his symptoms of pain, but the injection failed to give him any lasting relief.
9. In Dr. Benedict's opinion, plaintiff has a bursitis rotator cuff problem and some AC joint arthritis. Plaintiff previously suffered an AC joint separation in 1979 while playing football. Prior to October 13, 2003, however, plaintiff did not have any ongoing symptoms from his original AC joint injury. Dr. Benedict stated that although he suspected plaintiff's AC joint separation in 1979 exposed him to a greater risk of contracting AC joint arthritis, that condition would not account for the entire problem plaintiff was experiencing with his shoulder.
10. After reviewing plaintiff's description of his job duties with defendant-employer, Dr. Benedict testified that plaintiff's job duties placed him at an increased risk of developing the rotator cuff tendinopathy and that they significantly contributed to the onset of plaintiff's tendinopathy, which is not an ordinary disease of life to which the general public is equally exposed. Dr. Benedict also stated that the fact that plaintiff did not have any symptoms of pain in his shoulder before October 13, 2003 was not inconsistent with the work-related causes of plaintiff's injury.
11. Alexander Arab, ergonomics expert and certified physical therapist, testified that plaintiff's job duties would not have exposed plaintiff to an increased risk of developing his particular injuries. Mr. Arab visited defendant-employer on March 17, 2003 to perform a job assessment and to prepare a videotaped job description. The evidence at the Deputy Commissioner's hearing tended to discredit the accuracy of both Mr. Arab's understanding of plaintiff's job duties and of the videotaped job description. The video was taken between the hours of 5:00 p.m. and 6:00 p.m., before the restaurant typically becomes busy. Moreover, Mr. Arab did not personally witness the restocking or closing and cleaning duties of plaintiff's job. Additionally, plaintiff is shorter than the person in the video who performed the duties of the sauté chef.
12. Based upon the foregoing, the Full Commission gives greater weight to the opinions of Dr. Benedict, board-certified orthopedic surgeon and plaintiff's treating physician, than to Mr. Arab regarding whether plaintiff's job duties placed him at an increased risk of sustaining the injuries that are the subject of this claim.
13. Dr. Benedict testified that plaintiff is at maximum medical improvement if he chooses not to have surgery on his shoulder. Dr. Benedict stated that surgery would be reasonably necessary to give plaintiff some pain relief and felt that plaintiff would have some permanent partial disability to his shoulder following surgery. Dr. Benedict, however, did not feel plaintiff was totally disabled from work, stating that plaintiff "probably could have done some light duty work." He restricted plaintiff to no overhead lifting of more than five pounds.
14. As a result of his compensable occupational disease, plaintiff was unable to earn wages beginning October 13, 2003. As of November 19, 2003, plaintiff was capable of some light duty work. Plaintiff has not looked for suitable employment since October 13, 2003.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff's employment with defendant-employer caused or significantly contributed to the development of his partial rotator cuff injury and tendinopathy, and plaintiff's job with defendant-employer placed him at an increased risk for developing these medical conditions. Plaintiff's conditions were not ordinary diseases of life to which the general public is equally exposed and therefore, plaintiff contracted a compensable occupational disease. N.C. Gen. Stat. § 97-53(13); Booker v. MedicalCenter, 297 N.C. 458, 256 S.E.2d 189 (1979).
2. In order to meet the burden of proving disability, plaintiff must prove that he was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages less than his pre-injury wages. Demery v. PerdueFarms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001); Russell v. LowesProduct Distribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993). When a plaintiff meets his burden of showing disability, the burden then shifts to defendants to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demeryv. Perdue Farms, Inc., supra.
3. In the present case, the medical evidence shows that plaintiff was disabled from employment from October 13, 2003 through November 19, 2003. After November 19, 2003, however, plaintiff was capable of some work. Plaintiff did not make any effort to find suitable employment and it would not have been futile for plaintiff to look for work, given he is 48 years old and has some college education. Russell v. Lowes Product Distribution,supra.
4. As a direct result of plaintiff's partial rotator cuff tear and tendinopathy, he was unable to earn wages from October 13, 2003 through November 19, 2003. N.C. Gen. Stat. §§ 97-2(9); 97-29. Plaintiff is entitled to temporary total disability compensation at a compensation rate of $177.50 per week from October 13, 2003 through November 19, 2003. N.C. Gen. Stat. § 97-29.
5. Plaintiff is entitled to have defendants provide all medical treatment necessitated by his rotator cuff tear problems and tendinopathy resulting from his compensable occupational disease, including all treatment rendered at Raleigh Community Hospital, and all treatment rendered or recommended by Dr. Benedict of Capital Orthopedic. N.C. Gen. Stat. § 97-25.
6. The issue of whether plaintiff has any permanent functional impairment to his right arm is reserved for further determination.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay temporary total disability compensation to plaintiff at a compensation rate of $177.50 per week from October 13, 2003 through November 19, 2003. This amount has accrued and shall be paid to plaintiff in a lump sum. This compensation is subject to the attorney's fee approved herein.
2. Defendants shall pay all reasonable medical expenses incurred or to be incurred by plaintiff as a result of his compensable occupational disease so long as it tends to effect a cure, give relief, or lessen his period of disability. These medical expenses shall include continuing treatment of the plaintiff as recommended by Dr. Benedict.
3. A reasonable attorney's fee of 25% of the compensation due plaintiff under Paragraph 1 of this Award is hereby approved for plaintiff's counsel. This fee shall be deducted from the amounts due plaintiff and paid directly to plaintiff's counsel.
4. Defendants shall pay the costs.
This the 27th day of July 2005.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER